IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLEY A. STULTZ-ROBERTSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-cv-623-TLW |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Kelley A. Stultz-Robertson seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 8). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**INTRODUCTION**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 32-year old female, applied for benefits under Titles II and XVI on May 15, 2009. (R. 122-128). Plaintiff alleged a disability onset date of July 1, 2007. Id. Plaintiff claimed that she was unable to work due to "seizures, head injury, learning disability, emotional, [and] depression." (R. 136). Plaintiff's claims for benefits were denied initially on June 25, 2009, and on reconsideration on October 5, 2009. (R. 68-76; 81-86). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 88). The ALJ held the hearing on June 18, 2010. (R. 32-59). The ALJ issued a decision on August 16, 2010, denying benefits and finding plaintiff not disabled because she was able to perform her past relevant work as a food server, and a deli worker. (R. 15-31). The Appeals Council denied review, and plaintiff appealed. (R. 1-5); (Dkt. # 2). On March 27, 2014, the Court conducted a hearing. (Dkt. # 30). After reviewing the evidence and the arguments of the parties, the Court has determined that remand is appropriate.

**The ALJ's Decision**

The ALJ found that plaintiff had not performed any substantial gainful activity since her alleged disability onset date of July 1, 2007. Her last insured date was determined to be December 31, 2011. (R. 20). The ALJ found that plaintiff had the severe impairments of seizures and mental retardation. Id. Plaintiff alleged disabling back pain and depression, but the ALJ

considered each a non-severe impairment because the record revealed no evidence that "would impose more than a minimal limitation" on her ability to perform basic work. (R. 20-21). The ALJ applied the "special technique" to determine that plaintiff's mental impairment of depression was nonsevere. (R. 21-22). Under the "paragraph B" criteria, plaintiff had mild restrictions in activities of daily living, social functioning, and concentration, persistence, and pace; and no episodes of decompensation. Id. Plaintiff's impairments did not meet or medically equal a listed impairment. (R. 22-23).

After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff could perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). Due to seizure precautions, the claimant should avoid such things as heights and open machinery. She is limited to simple, repetitive tasks.

(R. 23). The ALJ then found that plaintiff's residual functional capacity allowed her to return to her past relevant work as a food server, or a deli worker, citing testimony from the vocational expert at the hearing that with the seizure precautions of avoiding heights and heavy machinery, and a limitation to simple repetitive tasks, plaintiff could perform these unskilled, light exertion jobs. (R. 28).[2] Accordingly, the ALJ found that plaintiff was not disabled. Id.

## ANALYSIS

Plaintiff alleges four errors: (1) that the ALJ failed to find that plaintiff meets or equals Listing 12.05, (2) that the ALJ deprived plaintiff of her constitutionally protected right to due process by failing to make a full and fair inquiry to develop the record, (3) that the ALJ failed at step four of his determination because he did not properly consider the effects of plaintiff's combined mental and physical impairments on her ability to function, and (4) that the ALJ's

---

[2] The ALJ did not make an alternative step five finding.

failed to perform a proper credibility determination. Because the first issue is dispositive, the Court need not consider the remaining three.

**Listing 12.05**

Plaintiff argues that the ALJ failed to find that she meets the listing requirements for 12.05B or 12.05C. Plaintiff claims that because her full scale IQ score is 59, she meets the requirements for 12.05B. In the alternative, plaintiff argues that she also meets the listing requirements for 12.05C, because her full scale IQ is 59, and she has an added severe impairment of seizures. (Dkt. # 12). The Commissioner counters that the ALJ properly found that plaintiff's scores were not valid, and that the ALJ found that plaintiff's seizures were well controlled with medication, and therefore did not significantly impact her ability to work. (Dkt. # 14).

The requirements for meeting Listing 12.05 are, first, to establish "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.* the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05. Plaintiff satisfied this initial step by presenting evidence from her high school that her "intellectual functioning [was] within the mentally deficient range" at age 15. Further, plaintiff's mother testified at the hearing that plaintiff suffered a severe head injury at the age of four, and stated that plaintiff was diagnosed "mentally retarded" at age six. (R. 47-48, 304).

Next, to meet 12.05B, a claimant must have "[a] valid verbal, performance, or full scale IQ of 59 or less." Dr. Crall performed a consultative examination of plaintiff on July 19, 2005, and after utilizing the WAIS-III test, opined that plaintiff's verbal IQ was 61, her performance

4

IQ was 65, and her full scale IQ was 59. (R. 212). Dr. Crall repeatedly stated that the test results were "considered valid and reliable indicators of her cognitive ability." Id.

The ALJ stated in his decision that he gave "great weight" to both the consultative examiners (Dr. Crall was actually the only consultative examiner), and the medical consultants of the DDS. There is a Psychiatric Review Technique form, completed by Dr. Hartley (an agency reviewing physician) that states that plaintiff's demonstrated level of functioning is higher than a valid full scale IQ of 59. (R. 288). Dr. Hartley also completed a Mental RFC form, opining therein that plaintiff could "perform simple tasks with routine supervision," "relate to supervisors and peers on a superficial work basis," and "adapt to a work situation," but that she "cannot relate to the general public." (R. 292).

The ALJ failed to reconcile this conflicting evidence. The ALJ gave "great weight" to Dr. Crall's opinion but did not accept Dr. Crall's "valid" full scale IQ score of 59. More importantly, he failed to explain why he did not accept all of the limitations that Dr. Hartley placed on plaintiff (i.e., that she cannot relate to the general public). As a result, this case must be remanded with instructions to the ALJ to reconcile this conflicting evidence at the least, or to order further testing of plaintiff to determine her "valid" IQ scores.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent herewith.

SO ORDERED this 28th day of March, 2014.

_____
T. Lane Wilson
United States Magistrate Judge